Dispute a fact, particularly a fact that is in the defendant's possession, when you have absolutely no evidence and are allowed no discovery. The question came to mind because I think it is the issue in this case, and it is the reason that we're asking that the summary judgment be reversed and the case remanded. I'm sure the Court's aware from the briefing, we weren't subtle about this. In this case, it began as a class action. We had a joint scheduling order, a case management order, agreed to by the parties and entered by the Court. That order said unambiguously that we were engaging in only class discovery. It set out dates for us to do that. It set out dates for class certification, and then it had a final line that said, if there is no motion for class certification filed, the parties will file a scheduling order to sort of complete what we'll be doing in the case. Very common in class actions, I'm sure this Court knows, to sort of say, we'll get to class certification, and then when we know what happens there, we'll provide a scheduling order for the merits. It expressly bifurcated discovery to class and merits. The order also said, as many do, that this will not be modified, barring exceptional circumstances. We proceeded to class discovery. During that discovery, we asked a number of questions about the fee. And this case was in a nutshell, just in case, because I think there's some dispute even in the briefs about what this case was. It was a simple argument. We argued that you charge a fee that you say is for shop supplies, when in reality it is not. That was the case. On a motion to dismiss, we argued that, and the Court said that does state a claim. If you could prove that, you'd have a violation of the MPA. So we sought to attain discovery first on class certification to prove that this was a common question. We wanted to know things like, do you charge the fee to everyone? Do you charge it for the same reasons? Sorts of things. We asked a few questions the Court thought was over the line. For instance, we said, tell us what you say the fee is for and what those things cost. We want to examine your alleged justification for the fee and see if it sort of survives the light of day. Tell us when you've had a list of these fees and how it's changed over time. Show us your accounting for the fee. The Court said, the defendant objected, and they objected and said that it is premature to discuss that. So then we said, okay, well, we don't believe that. We think it goes to class discovery. We filed a motion to compel. The Court issued an order in which it said, we can't allow you, you're not allowed any discovery on this issue. Your argument that you can get any merits discovery is disingenuous. You may only proceed to class discovery. We were shut out from asking any questions that went past these very sort of threshold questions. Then there was a motion for summary judgment file. And as you can imagine, our response was immediate. And we said, there's nothing allowing for a summary judgment motion. And we've been prohibited from engaging in merits discovery. And you objected and said it was premature to engage in merits discovery. We simply can't respond. Please stay this. The Court denied our request to stay. We said, please give us time for discovery. The Court did not. Then we filed a 56D affidavit that is something like six pages long in which we had to reveal our work product and say, here's what we would want. Here's what we would do if we did discovery. Here's what we want to know. And the Court said that's insufficient and granted the motion for summary judgment literally when we had no merits evidence at all. We cited a few cases, and I'll sort of cop to a mistake here. We cited a few cases in our brief about this idea. But I wish, in hindsight, we had cited many more, as any appellate attorney does the day before, even though you probably shouldn't. You go look at all the cases again. And you run the search again. And you hope that a case came down yesterday that you don't know about that's very helpful. Or if it's harmful, at least you won't look like an idiot. When I put the search in to Westlaw, and I simply said in plain language, court may not grant summary judgment prematurely, must allow full discovery. I found a case in every circuit. I found multiple cases in every circuit. I found cases at the U.S. Supreme Court. The U.S. Supreme Court said in Anderson v. Liberty Lobby, the plaintiff must present affirmative evidence in order to feed a properly supported motion for summary judgment. This is true even when the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery. Another court said, generally speaking, summary judgment must be refused, where the non-moving party has not had the opportunity to discover information that's essential to his opposition. We cited some of these cases. The 8th Circuit has said, although discovery does not have to be completed before a district court can grant summary judgment, summary judgment is proper only after the non-movement has had adequate time for discovery. And that's the Arabian American Airlines case. I'll give you the site, because I'm not sure we had that one. 609 F3rd 917. And there are many more. I don't want to ask the court to do my work, but I would invite you to take even the briefest of looks. Some questions take hours to sort out. This takes about ten minutes. It is a list of cases that say this can't be done. I think the defendant has argued, well, there was enough evidence in the record. And the court seemed to buy that. The court's order is really pretty short. It's only a couple pages. And the court says, well, they adequately told them what it is. They told them it was for shop supplies. They told them how they would calculate it. And then they did. And there's nothing left to chew on here. The problem, of course, was our argument was it's not for shop supplies. And so as I thought about what the court said, it seemed to me it was sort of like this. If I told someone, I'm selling you a new car. And I said, I'll tell you the name of the car, the make of the car, the year of the car. And then I give them a list of all the items that are in the car and all the features of the car. And then I gave them how I calculated the price. And I said, I took the price that I paid from the wholesaler, and I added a percentage, and here it is. Then I gave them the car. You could say you told them that there was profit. You told them how you calculated the price. You told them all the items that are in the car and the features of the car. And you told them what the car was. The problem is if you get it home and you find out that it's an odometer rollback, and then, in fact, it's not a new car, it's a corporate lease, and it had 5,000 miles and they rolled it back, all those disclosures mean nothing because what you were told was untrue. And our theory was that what they were telling customers was misleading. Counsel, in paragraph 18 of your amended complaint, you've got four bullets. Yes, Your Honor. Do they fairly summarize what you're really trying to do, how this violates the MMPA? Your Honor, let me grab the appendix and I'll look at it. Sure. Let me just, while you're looking, see if that was going to be my question, is what is your allegation of the violation of the act is or the hadn't received claim? Our allegation is that it is unfair and deceptive to charge a fee when it is not, in fact, tethered in any way to the thing you say it is. And I will tell the court. But didn't you get enough? Now, do your fourth bullet. Didn't you get enough discovery that it says failing to advise, which is the sign, customers that the fee is not directly or proportionally related to cost of shop supplies? Surely you got enough discovery on that. I'm sorry, Your Honor. I thought I understood where you said you were. Let me make sure I'm on the same page. Okay. It's paragraph 18 on page 8. And I have plaintiff's amended class action complaint. I'm sorry. I'm on page 4. Document number 12, file 11211. Tell me if I got the right thing. Tell me if I got the wrong thing. Yes, Your Honor. I see where you are. Now, are those four bullets your claim? They are certainly part of our claim. Tell me where in your complaint you got the other part of your claim. Well, we also say emissions of material information described above. Well, yeah, but that's referring to 18, I think, counsel. I don't mean to tell you what your complaint says, but it's right above it, too. We also said, well, Your Honor, on the previous page, for example, we said charging the fee separately obscures the true nature of the charge and makes it appear as though the fee is dedicated to a charge that cannot be negotiated. I don't mean this as a trick. No, I understand. How about those four bullets? Are they the core of your complaint? Are they related to your complaint? They are certainly a part of our complaint, and I think they're an important part of the complaint, yes. Because, see, the difficulty here is you need to tell us which of your claims you didn't get discovery on. Because if your claim's no good and if the fact's not material, it doesn't matter. You didn't get discovery on it. I understand. Yeah. So take one of the four bullets and make the case with one of those four bullets. Yeah, so let's look at the third one. Okay, fair enough. Naming the fees in a way that makes it look as if it relates to shop supplies when, in fact, it is not. Okay. All right, it's called a shop supply fee. And so the first challenge here is on the document, if you just get the invoice, it says shop supply fee. If you go into the store and look around, some people, not our plaintiff, will find a sign. Now, the court says since the plaintiff didn't see the sign, that means she doesn't have causation. It's quite the opposite. Our suggestion was that the problem here is that we're having inconsistent disclosures that will mislead a consumer. A consumer sees first shop supply fee. I think the only reasonable inference from that is it's related to shop supplies. Now, Your Honor, let me tell you the sort of evidence that we have obtained in other cases and that we were going to seek to obtain here. In one of the cases we handled, there was a memo, an internal memo, from an executive manager that said that this fee was not for shop supplies, that we set it to compete with our competitors, and that we picked that number because it was competitive in the marketplace. Well, Counselor, now, you brought up other cases. Yes, Your Honor. Now, in the McCall case, didn't Judge Ross agree with what Judge Jackson does in this case? He absolutely did. I think that's what encouraged the summary judgment in this case. Correct. Is that after that was handed down, they said, well, we might as well take a run at it without getting through any more discovery or class certification. I completely agree. Your Honor, we appealed Judge Ross's decision. We disagreed with Judge Ross on the evidence. We were prepared to come here and argue that case, and that case settled for value on a class action basis that provided relief to thousands of customers. And so I would tell you that that was a heavily disputed case, and I think it settled, at least in my opinion, in part because there was a recognition that this may be overreaching. So I don't disagree with you. I think she completely agreed with Judge Ross. I respectfully would suggest the court was wrong. Your Honor, if we put in evidence, for example, and this has come out in any case I've dealt with in this setting, that the first time the list was created of shop supplies was after you're sued. And that if you say, well, what was a shop supply? Give me the full list. Well, we don't have one. Well, how do you know you're recovering its cost? Have you calculated its cost? No, we have not. Have you done any accounting to see if this is 1%, 10%, 50%, or 90% recovery? No, we haven't. If we had that evidence alone, Your Honor, it would begin to call into question the idea that this is somehow tethered to shop supplies. We weren't allowed to ask those questions. Now, it's interesting. In an unsolicited declaration, and it is the declaration that was attached. It's the Appellee's Addendum 1, Paragraph 5. They say, unsolicited, that the fee is intended to recover the cost of a variety of materials and items used in automotive servicing. It's to recover cost. I never got to even see if that was true. In a deposition, I would have said, well, if it's to recover cost, what are your costs? Well, either they would have said that they are this and we could assess that. One could imagine that if they were 1%, because the number one thing they say that counts here are paper mats, that maybe we'd have something to talk about. One could imagine that if they said, we include in that toilet paper, which we've seen in a case, we could say, well, is toilet paper a shop supply? Is that what you're charging your customer for? Do you think that adequately is disclosed? They could say, as another defendant said, the same in the McCall case, that this is for our software, that this is for amortization of our buildings. That evidence would suggest that this is not a shop supply at all, that instead what happened was they said, well, we need to add something to the bottom line of the pricing. Your Honor, that's why I was pointing you back to 14 and 15 and 16, because part of our theory here was that you don't want to raise your price. So you keep the low price, and you find a way to tack on a few bucks to every transaction. You make it small so it's not disputed. You slip it in, and people don't know how to fight. Your client, that kind of goes to causation, but your client got the lowest price in town, and she checked around. So I just throw that out there, because I know the district court didn't decide it on causation, but apparently these were the cheapest tires she could find. Your Honor, I would suggest to you that price alone, in my car example again, you can know the price, but if what they tell you the price is for isn't true, you've still been misled. It is not enough to know what you paid. It's not enough to get a good deal. The question is whether or not they disclose this. Is your theory too broad, or are you saying the MPA is too broad, that you can sue these car dealers when they try to sell us cars, and we have no clue how what they're selling us relates to the cost of anything? Do we have a claim against the car sales person in the typical sale of Isabel Zolliger theory? I would say, Your Honor, if the car dealer is giving you misinformation. In fact, there were some cases in Missouri about a fee. They were affirmed by the Missouri Supreme Court in the mortgage setting, and then they settled in the auto setting. And what they were was that they were charging a fee called a document preparation fee, and that was determined to be both the unauthorized practice of law, and in some cases an unfair or deceptive practice, because in fact that's not what the fee was for. And so I would say, yes, Your Honor, the MPA does certainly come into this representation. Because you always go in there and they'll say, we'll sell it to you at $100 below our cost. So, you know, you'd think, well, they're losing $100. I'm sorry, I didn't catch that question, Your Honor. And a car dealer, the car dealer says, we'll sell you this car at $100 below our cost. Well, if you take that literally, they're losing $100 every time they do that. Well, Your Honor, I would suggest to you. But we all know that that's not the way the pricing is. So is that a violation? It's actionable. Your Honor, if they look at you and tell you affirmatively, we are charging you X amount below cost, and that's untrue, the MPA covers that. It is a broad remedial statute. Yeah, but what if they show you an invoice? Now, they're smarter than they look, because, as you know, they show you an invoice that's cost. And then when you really ask them, if you're assertive like we are, they say, well, we get volume kickbacks and something and something, and overhead, floor plans, something. They give you so much gobbledygook they don't give you an answer. Your Honor, I see that I'm losing even my reserve time. I would like to answer your question, if I could. I think what you're highlighting is I'm feeling like these are very factual and that I would need to dive into the case. But I think that highlights why we can't lose a summary judgment without facts. In this case, if I produced evidence that they knew, maybe a memo where they said, if you make it 6%, that'll seem very specific. And it'll feel like it's tethered to something. And in reality, they'd never done a calculation. I think this court would say, I don't like that. That's deceptive. To anticipate how consumers will respond and calculate the fee in a way that is meant to slide it by, when in fact it's not related to your cost at all, would be a deceptive practice. The problem is I can't tell you that's what they did, because I don't have any discovery. And so I can't tell you we will beat a summary judgment. I believe we will. I believe this evidence is likely to be there. That's why we filed the case. And I can tell you in other cases it has been found. And in state court, a case like this has just been certified. I mediated it yesterday in front of Judge Limbaugh. And these cases are proceeding when there's evidence. But we were cut off at the knees here in an absence of evidence. You're repeating yourself now. So your time's up. Yes, Your Honor. I will give you one minute in rebuttal. I appreciate it. Very gracious of you. Thank you. Mr. Durkin, good morning. Good morning. I'm pleased to court Martin Durkin on behalf of Defendanopoly Bridgestone Retail Operations. Your Honor, we're here today on an appeal from the district court's entry of summary judgment on behalf of Bridgestone with respect to a consumer fraud or a Missouri Merchandising Practices Act claim related to a $1.20 shop supply fee that was charged to plaintiffs. District court's entry of summary judgment was based on the simple fact that Bridgestone disclosed the fee both in written in-store disclosures, in its print advertising, and most importantly on the written estimate that the plaintiff received before the car was serviced. This was a fee that was disclosed to the plaintiff, actually shown to her daughter in this case. The plaintiff didn't go to the store. But shown to the plaintiff before any work was done. Plaintiff was told the cost of the tires, the cost of the labor to install, a $1.20 shop supply fee, tax, and a total cost of $250.35. That's what she was told before any work was done on the car. When the work was finished, she was given an invoice. The invoice totaled $250.35. That's what plaintiff was charged. Bridgestone told her before the service was done, this is how much it will be. Bridgestone showed her afterwards. That was the price that they charged. It included a $1.20 shop supply fee. But isn't the claim that it isn't shop supply fee, that it's something else? But the disclosure expressly explains what the shop supply is. It discloses both on in-store signs and in print advertising that the fee for shop supplies is 6% of labor cost. And the reason for that is because these are things consumed in the servicing of cars that aren't precisely itemizable or it's not easy to measure how much is consumed in the servicing of the car. What about this added language of it represents costs and profits? Didn't the district court rely on that as well? In one sense, you could almost see that the opposite way. What are profits? That's sort of a general term. It doesn't really tell the consumer much of anything except that they want to make money off of this particular service. Indeed, that was one argument to the district court that, yes, Bridgestone makes a profit on this fee. We don't hide that. We freely disclose it. We admit we make money on the shop supply fee. And we point out that it's okay for a business to make money. Well, counsel, your best hope here would be if you had a case that said this kind of stuff is not within the Missouri Merchandising Practices Act. What's the closest case? As you know, most times these plaintiffs win on appeal in the MMPA, just as a numerical matter. We don't decide cases on a numerical matter. But do you have what's your best case that says that these, particularly the four bullets on the complaint in paragraph 18, that these four are not violations of the MMPA? Is that part of this case or not? My argument, even. I believe it is part of the case. But in terms of these being, whether Bridgestone's conduct is deceptive, when you look at these, we admit we generate a profit. We tell everyone we generate a profit. We don't dispute that. And that was something the district court noted, that in terms of plaintiffs needing discovery on these issues, we don't dispute it. We admit we make a profit on this fee in terms of how the fee is calculated. Again, we disclose right in the stores. This is how we calculate the fee. Well, to focus it on their bullets, okay, so that's failing to advise. That's the sign and everything you've told us. But go above there. It said, naming the fee in a way it looks like it relates to shop supplies when it doesn't. In fact, we expressly explain in the disclosures what the fee relates to. We call it shop supplies on the invoice. On the signs we explain we consume shop supplies in servicing cars. And there's undisputed evidence in the record. But what about the end of that, when it in fact is not? And that's their allegation. When in fact, I got it in the wrong order, but I got the right words, when in fact it is not. Well, there's testimony in the record that every car that is serviced uses shop supplies. So everyone who paid a shop supply fee received some shop supplies. That was the testimony of Mr. There was merits discovery in violation of the district court's order? That was part of his 30B6 deposition. That question was asked. That was the answer that was given. Everyone gets shop supplies. There's a fine line in this case between merits and class discovery. One thing I would point out, with respect to Plaintiff's Rule 5060 affidavit, the categories of information that plaintiffs sought in that affidavit and throughout the motion were not related to the basis of the motion for summary judgment. That was the reason the court denied the motion. The court went through each category of information plaintiffs sought and expressly noted that that didn't seek information that was relevant to the motion for summary judgment. With respect to how the fee was calculated, Bridgestone explained how the fee was calculated. It's not a question of- Counsel, they don't have to take your word for it. That's what discovery is all about. And make our cases simpler if we said, well, we take one side's word, you know, Judge Judy approach, and forget about the other side. So why don't they get a chance to look at your financial documents related to income and expenditures for shop supplies? That's their second request. Well, first, it would be irrelevant. We say we earn a profit. We explain how we calculate the fee. It's not required that a business calculate all of its cost before it sets a price. The market is what sets a price, not the business and not its cost. As long as it's not deceptive. We're back to the-can you give me any help on the MMPA? What's the closest case that's kind of for you on the MMPA? I would suggest the closest case is probably out of Ohio, which is the Roto-Rooter case, where they're reading the Ohio Consumer Protection Act, say, again, the fee was disclosed ahead of time. It was listed on the invoices. It was explained, and it was basically if you tell the customer ahead of time, in the written estimate, this is what the fee is going to be, and that's the same fee that you charge, that's not deceptive because you've told them ahead of time this is what the fee will be, this is what you're paying. That was also the same decision from the Texas courts in the MHSB decision with respect to car leasing. The specific charges with respect to the car leases were listed there in the initial contract. Those same charges were assessed again at the end of the lease. Well, it was disclosed ahead of time, you were charged that, that's not a deceptive practice. But no Missouri cases. That's correct. You're aware that the Missouri Supreme Court has always said case by case determination of whether a defendant's conduct violates principles of fair dealing. That's correct. And here the district court, in looking at Bridgestone's conduct, found as a matter of law that Bridgestone's disclosure was adequate and not deceptive, particularly because Bridgestone disclosed this information at the outset of the transaction. Before the consumer was committed to making any purchase, Bridgestone told the consumer what the price would be and identified the charge for shop supplies within that price. That's it. Anything you want to add? Do you want to talk about causation at all? I don't think that district court didn't rely on it. The district court didn't rely on causation. I'm happy to address causation, which was our fallback argument. Essentially, our position is that the 8th Circuit is correct in interpreting Missouri law under its General Motors versus Owen decision, finding that causation is required under the Missouri Merchandising Practices Act. And what kind of causation do you think is required? Because the lawyers say this, they talk about ten different things and call it causation. I believe it's transactional causation that's required. That the defendant's misrepresentation had to be such that when you read the act and it refers to the as a result of, that it is the plaintiff's engaging in that transaction that had to be as a result of the defendant's conduct. I think it's particularly appropriate here in that what we're dealing with isn't concealment, but rather the disclosure. The Missouri case, the Ploubal decision, dealt with the concealment of information, concealment of the risk. Here it's not a matter of Bridgestone concealing anything. We disclosed everything, and the plaintiff simply didn't read anything. We're not being accused of not telling plaintiffs. This was listed on all the invoices and all the estimates. How long was the deposition of the corporate representative, Eric Griffith? It was approximately two hours. I believe it went about 87, 90 pages. Thank you. That's all that I have. If the panel has no additional questions. Just one follow-up question back on this issue of the profits. Is it your position that that's such a deep well that even if there was something else that's included in this fee, that profits is a broad enough term that the consumer is on notice that it could include some of the kinds of costs that opposing counsel has raised? I think in terms of listing profits, it's done to notify the consumer that it's not necessarily dollar for dollar. We will make money on this fee. Bridgestone did disclose, both in answers and interrogatories and at Mr. Griffith's deposition, over 70 items that are included as shop supplies. Mr. Griffin also testified that there is no comprehensive list of what shop supplies are because, frankly, it changes as the things used to service automobiles change, as the types of automobiles change. What you needed 20 years ago to service a car differs from what you need today to service a car. Your position is that term profits still relates to the phrase shop supply fees. It's just we don't know exactly how many of those shop supplies we're going to be using in your particular case. So we might make a profit on you. We might lose money on the next person. Correct. That's all that I have. Okay. Thank you, Mr. Durkin.  Thank you, Your Honor. I'll hit the podium talking and see if I can make it 102. Your Honor, regards to the Missouri Merchandising Practices Act, the reason no case was cited for you is there isn't one that supports the appellee's position. Instead, the Missouri Supreme Court has said it is an all-encompassing and exceedingly broad. The literal words cover every practice imaginable and every unfairness to whatever degree. Courts have consistently said that a jury has to decide that. In fact, the jury instructions themselves ask the jury, was this unfair, was this deceptive, was this misleading? Those terms are defined, and we have them in our brief at page 51. For example, a misrepresentation is an assertion that is not in accord with the facts. And so, Judge Riley, I would suggest that that would suggest in your question that if someone flat-out lies to you, you absolutely have an actionable cause of action under the MPA. Our assertion here is that what was told was not true. And to your question, Your Honor, Judge Kelly, they never backed away from the fact that this was cost and profit, that this does relate to shop supplies. And the problem is we were never allowed to investigate whether it relates to shop supplies at all. Without that evidence, we could not refute summary judgment. I would ask the Court to reverse and remand so that we can complete discovery and this case can be decided on the merits. Okay. Thank you, Mr. Camel. Thank you. We will take it under advisement and be back to you as soon as we can. Thank you. Thank you. Ms. Dino, are we ready for the last case? I believe we are. Counsel here? Mr. Topic is here, sir. Okay.